## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT HOLLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-323-TWP-DKL |
| | ) | |
| ARAMARK CORPORATION, | ) | |
| D. LEATHERS, JOHN SCHILLING, LT. SCOTT | ) | |
| KING, SERGEANT PETTY, TERESSA | ) | |
| LITTLEJOHN, JERRY LYTLE, and | ) | |
| JANE STADICK, | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY DISCUSSING MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Motion for Summary Judgment (Dkt. 118) filed by Defendants Lieutenant Steven King, Sergeant Petty, Teressa Littlejohn ("Ms. Littlejohn"), John Schilling ("Mr. Schilling"), and Jerry Lytle ("Mr. Lytle"), (collectively, the "Defendants"). Plaintiff Robert Holleman ("Mr. Holleman"), an Indiana prisoner, alleges that while he was housed on the Secure Control Unit ("SCU") at the Wabash Valley Correctional Facility ("Wabash Valley"), the Defendants violated his Eighth Amendment rights by failing to provide him adequate meals. He further alleges that defendants Ms. Littlejohn and Mr. Lytle, as grievance specialists, did not properly investigate his grievances regarding his meal portions. For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.

### I.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P.

56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden of showing that there are no issues of material fact and that he or she is entitled to a judgment as a matter of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison,* 446 F.3d 742, 748 (7th Cir.2006) (internal quotation marks and citation ns omitted); *Celotex,* 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *see also Carrroll v. Merrill Lynch,* 698 F.3d 561, 2012 WL 4875456 at *3 (7th Cir. Oct.16, 2012). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the non-moving party based upon the record. *See Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.,* 216 F.3d 596 (7th Cir. 2000).

## II.   SCOPE OF EVIDENCE

The Defendants argue that Mr. Holleman's Statement of Material Facts in Dispute does not comply with Local Rule 56-1 because the facts are not adequately supported by admissible evidence. For example, Defendants argue that Mr. Holleman's citations to his Complaint do not support his factual allegations because they are simply allegations and not supported by

evidentiary material. However, because Mr. Holleman signed his Amended Complaint under penalty of perjury, this Court may treat that pleading as an affidavit and consider it as evidence. "By declaring under penalty of perjury that the [Complaint] was true . . . he converted the [Complaint], or rather those factual assertions in the [Complaint] that complied with the requirements for affidavits specified in the rule . . . into an affidavit." *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (*quoting Ford*, 90 F.3d at 247); *see also Payette v. Hoenisch,* 284 Fed. Appx. 348, 350, 2008 WL 2648917, *1 (7th Cir. 2008) (by declaring under penalty of perjury that the complaint and response were true, the plaintiff "converted" those filings into affidavits). However, only factual assertions which are made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated are "affidavit material"; everything else may be disregarded. *See Ford*, 90 F.3d at 247. In any event, while the Court may properly consider "affidavit material" in the amended complaint for the purposes of summary judgment that step is unnecessary because the evidence duplicates that found in Mr. Holleman's affidavit submitted in support of his response in opposition to summary judgment.

The Court will consider the facts, but not legal conclusions, properly presented in Mr. Holleman's affidavit and other designated evidence. To the extent the Defendants object to Mr. Holleman's affidavit as self-serving, the Seventh Circuit has repeatedly warned against objecting to an affidavit on this basis. *See Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). "Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Id.*; *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005); *see also Dalton v. Battaglia*, 402

F.3d 729, 735 (7th Cir. 2005) ("We have repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge.").

### III.  FACTS

Consistent with the foregoing, the following statement of facts was evaluated pursuant to the standards set forth above.

**A.     Food Service**

**1.        IDOC Policy**

The Indiana Department of Correction ("IDOC") contracts its offender food services to Aramark Corporation ("Aramark").  The IDOC conducts audits of the preparation, delivery, and service of meals to offenders on a quarterly basis to ensure compliance with the Indiana State Department of Health guidelines. Over the time period at issue in this matter, approximately October, 2008 through April, 2010, Aramark was cited for portion control problems on the following audit dates:  July 17, 2008; April 23, 2009; and September 2, 2010. None of the food portion control problems for which Aramark was cited involved the SCU at Wabash Valley. Each cited food portion control problem was eventually corrected through a Plan of Action. Aramark was found to be compliant in all other nine quarterly audits for the three-year period at issue.

During the time frame of the incidents complained of in this action, Mr. Schilling was the Director of Food Services for the IDOC.  If a specific grievance related to food portions is brought to the attention of the Food Service Director, an inquiry into the problem is conducted, and a statement of the findings is provided to the offender through a formal grievance response. If a particular individual can possibly correct the problem, the problem will generally be investigated, and the problem will generally be brought to the attention of the relevant individual

for correction. Of the grievances submitted by Mr. Holleman that were reviewed by Mr. Schilling, none were substantiated by evidence supporting a deliberate attempt to provide short food portions.

The Defendants assert that one documented incident in the time frame at issue here involving food shortages on the SCU at Wabash Valley consisted of Aramark employees running short on the May 9, 2009 meal entrée.  Mr. Schilling was made aware of this isolated incident and promptly contacted Aramark employees to correct the problem.  The May 9, 2009 food shortage affected all offenders on the SCU, not just Mr. Holleman individually. Aramark employees generated a Plan of Action to address the May 9, 2009 food shortage and on the next outside quarterly audit performed by the IDOC, there were no observed food portion problems at the SCU.

### 2.    Allegations of inadequate food service

Mr. Holleman was incarcerated on the SCU between October 15, 2008 and April 14, 2010.  He asserts that during this time, he was fed spoiled food, uncooked food, and short food portions on a regular basis.  He and others experienced consistent food portion problems in the SCU.  The short food portions made Mr. Holleman lethargic most of the time.  Mr. Holleman suffered pain from hunger and lost a significant amount of weight during this time.  Upon his entry to the SCU on October 15, 2008, Mr. Holleman weighed approximately 172 pounds.  This was his normal weight.  At that time, he was on a special gluten-free diet for celiac disease.

Mr. Holleman states that each State Defendant was aware of the medical diet he was on, based on his being on the SCU between August 2006 and March 2008 and based on past grievances from Mr. Holleman to Defendants Lieutenant King, Sergeant Petty and Mr. Schilling. He also had personal conversations with Mr. Lytle concerning his no-gluten diet.

Mr. Holleman chose not to eat the foods that contained gluten causing him to lose a large amount of weight and causing him to suffer pain from hunger.  He was informed by staff to eat the foods with gluten, or eat nothing.  Lieutenant King and Sergeant Petty were frequently called to Mr. Holleman's cell because his food trays contained gluten and contained only small portions of food. They essentially informed Mr. Holleman they could do nothing. Sergeant Petty and Lieutenant King were personally made aware of the short food portions served to Mr. Holleman on numerous occasions including on March 22, 2009.  Mr. Holleman wrote and spoke in person to Lieutenant King and Sergeant Petty several times concerning the "child-like food portions."

Mr. Holleman states that Sergeant Petty informed him that by keeping the heat down on the SCU in the winter and by feeding the prisoners short portions of food, staff were better able to control the prisoners because the prisoners would be under covers from the cold and too weak to want to fight or argue with the staff.

Lieutenant King and Sergeant Petty (at times) escorted Albert Daeger (or the designated Indiana State Department of Health Inspector), from prisoner to prisoner on the unit, and listened to the prisoner's complaints to the inspectors.  This included Mr. Holleman's complaints of "child-like food portions."

Mr. Holleman was not fed 2,500-2,800 calories per day while he was incarcerated on the SCU relative to the time frame of this action. Instead Mr. Holleman was fed 1,500-2,000 calories per day.  For example, at breakfast one day in March 2009, Mr. Holleman's tray consisted of two boiled eggs, a four ounce serving of grits, and milk.   Mr. Holleman showed that tray to defendants Lieutenant King and Sergeant Petty.   At lunch that same day, Mr. Holleman's tray consisted of one 10-ounce serving of potatoes, six green beans and a very small piece of chicken. Mr. Holleman showed that tray to defendants Lieutenant King and Sergeant Petty. Neither

Lieutenant King nor Sergeant Petty gave Mr. Holleman any more food for that meal or resolved the food shortage.  Mr. Holleman never received replacement food for the May 10, 2009 food shortage.  Mr. Holleman went on a hunger strike on March 22, 2009 for three days. Even when Mr. Holleman informed Lieutenant King and Sergeant Petty that he was losing a large amount of weight and suffering pain from hunger based on his food trays, they failed to act. Mr. Holleman often filed complaints with the Indiana State Department of Health who would investigate.

Once he was off the no-gluten diet in late March 2009, Mr. Holleman and others were systematically served "child-like food portions" on all of his trays in the "Aramark regular diet." Mr. Holleman filed grievances concerning these portions and the watering down of his food.  His trays would routinely be missing food items. On May 10, 2009, for example, his tray was to have two hot dogs, cake, two hot dog buns, coleslaw, and beans. Mr. Holleman's tray had no hot dogs, no hot dog buns, and no cake. When Mr. Holleman complained about his food tray that day, he learned that eighteen trays had been delivered onto the SCU similar to his.

Further examples of short food portions include a tray that was to have a 10-ounce serving of cream-o-wheat or oatmeal, but instead had six small spoons of that hot cereal (an approximate 4-ounce serving). Other trays served by the Defendants were to have a 10-ounce serving of rice, or chili-macaroni, or potatoes, but would only include a 4-ounce serving.  The cake and corn bread or brownies would be cut in half.  Further, Mr. Holleman would receive only the top or the bottom of a biscuit at times.

**B.     Mr. Holleman's Grievances**

Mr. Holleman grieved food shortages with Wabash Valley and Aramark approximately 13 times during his stay on the SCU.  He was denied filing grievances approximately six times relative to food shortages on the SCU.  Mr. Holleman is aware of numerous other inmates also

grieving short food portions on the SCU with Wabash Valley and Aramark during this same time frame. The individual who receives and processes grievances at an IDOC facility is a designee assigned by the correctional facility head and is referred to either as an Executive Assistant or grievance specialist/coordinator. Under IDOC policy, the grievance coordinator or designee initiates an investigation into a grievance by contacting the officials involved in the allegations and reviewing relevant documents.  Under IDOC policy, the investigation and resolution of an offender's grievance may be completed by the grievance specialist or designee, as appropriate in each instance.

Grievance specialists Littlejohn and Lytle received and processed grievances submitted by Mr. Holleman, and where appropriate, investigated and sought responses of other officials. Ms. Littlejohn's and Mr. Lytle's involvement in Mr. Holleman's food-portion grievances was limited only to responding to them appropriately and processing them. Ms. Littlejohn and Mr. Lytle were not directly responsible for the food portions served to Mr. Holleman while he was incarcerated in Wabash Valley's SCU, or at any time.

Mr. Lytle came to Mr. Holleman's cell on August 19, 2009, and informed Mr. Holleman that he had observed the food trays given to offenders in the general population kitchen and the food on the trays served to the inmates on the SCU.  Mr. Lytle stated that the trays delivered to the SCU for inmates to eat received significantly less food on the trays, but that Aramark was not going to do anything about it, so Mr. Holleman is "beating a dead horse" by filing grievances.

## IV. DISCUSSION

### A.    Deliberate Indifference of Defendants King, Petty, and Schilling

Defendants King, Petty, and Schilling argue that they were not deliberately indifferent to Mr. Holleman's needs because there were no documented food problems for the SCU in any of

8

the regular audits the IDOC conducted at Wabash Valley, except for the one isolated incident that was resolved. Mr. Holleman asserts, on the other hand, that he was repeatedly served short food portions and that Defendants Lieutenant King, Sergeant Petty, and Mr. Schilling were aware of these issues, but failed to address them.

The Eighth Amendment to the United States Constitution requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).   A prison official violates the Eighth Amendment only when (1) the deprivation is, objectively, "sufficiently serious," and (2) the prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id*. at 834.  The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837.

Consistent with this, prisons are required to "provid[e] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robinson v. Illinois State Corr. Ctr. (Stateville) Warden*, 890 F. Supp. 715, 720 (N.D. Ill. 1995) (quoting *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985)).  "Without question, not all conditions are sufficiently serious to implicate the Eighth Amendment, and just a few withheld meals would not contravene the constitution." *Harris v. Allen*, 2013 WL 1689280, *4 (S.D. Ill. Apr. 18, 2013) (citing *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999)).  The denial of food can rise to the level of a constitutional violation, however, depending on the severity of the food deprivation. *See e.g.*, *Atkins v. City of*

*Chicago*, 631 F.3d 823, 830 (7th Cir. 2011) ("Depriving a person of food for four days would impose a constitutionally significant hardship."); *Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (concluding that denial of 16 meals in 23 days was sufficient to support claim of deliberate indifference).  A court must assess the amount and duration of the deprivation to make this determination.  *Harris*, 2013 WL 1689280, at * 4*.*  The *Harris* court found that the plaintiff submitted enough evidence to survive summary judgment on his claim of inadequate food when he presented admissible evidence that he was denied lunch two or three times a week for approximately three months.  *Id.*

Here, there is a dispute of material fact regarding whether defendants Lieutenant King, Sergeant Petty, and Mr. Schilling exhibited deliberate indifference to Mr. Holleman's need for adequate nutrition. With respect to the objective prong of the deliberate indifference test, while the Defendants assert that there were only isolated incidents of short food portions on the SCU, Mr. Holleman alleges that his food trays were often missing food or were "watered down." Mr. Holleman provides examples of "watered down" trays or "child-like" meals he was served. He states that this occurred on a regular basis and that he was often in pain from hunger and lost a significant amount of weight. These allegations are sufficient to satisfy the objective prong at the summary judgment stage. There is also a dispute of material fact regarding the subjective prong of the deliberate indifference test as to defendants Lieutenant King, Sergeant Petty, and Mr. Schilling.  Mr. Holleman has provided evidence that he spoke to Lieutenant King and Sergeant Petty about his food portion concerns several times and that these concerns were not resolved. Mr. Schilling was apprised of the food issues on the SCU by Mr. Holleman by letters from Mr. Holleman and by responding to Mr. Holleman's grievances.

Defendants King, Petty, and Schilling next argue that they are entitled to qualified immunity from Mr. Holleman's claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231(2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).   "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights."  *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) (citing *Saffell v. Crews,* 183 F.3d 655, 658 (7th Cir. 1999)).  "It is not necessary for liability . . . that an identical factual situation had been legally decided adverse to the officer."  *Saffell*, 183 F.3d at 658.  "The officer's actions are to be considered in light of the particular circumstances the officer faced at the time. . . .  Officers under this standard may be protected from liability for objectively reasonable decisions, even if wrong."  *Id.*  Here, Mr. Holleman's right to adequate nutrition was clearly established at the time of the incidents he complains of.  *See Harris*, 2013 WL 1689280, at * 6 (holding that the requirement of the Eighth Amendment that inmates receive adequate food, clothing, shelter, and medical care is a clearly established right which the defendant could be expected to have known).  Accordingly, the Defendant King, Petty, and Schilling are not entitled to qualified immunity on Mr. Holleman's claims.

**B.     Defendants Littlejohn and Lytle**

Defendants Littlejohn and Lytle argue that they are entitled to summary judgment on Mr. Holleman's claims because they played no other role than as grievance specialists. Mr. Holleman

asserts that these defendants should be held liable because the grievance process at Wabash Valley is not meaningful.

Because Mr. Holleman had no expectation of a particular outcome of his grievances, there is no viable claim against grievance specialists Littlejohn and Lytle which can be vindicated through 42 U.S.C. ' 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (without a predicate constitutional violation one cannot make out a *prima facie* case under ' 1983); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Accordingly, defendants Littlejohn and Lytle's motion for summary judgment is **GRANTED**.

**C.     Statute of Limitations**

The Defendants next argue that much of Mr. Holleman's claims are barred by the statute of limitations. The statute of limitations for actions brought under § 1983 is calculated as the personal-injury statute of limitations in the forum state. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Owens v. Okure*, 488 U.S. 235, 236 (1989). Indiana's personal-injury statute of limitations is two years. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); Ind. Code § 34-11-2-4. The accrual date is the date that the statute of limitations begins to run. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). A claim accrues on the date that a plaintiff discovers he is injured. *Id.*

Mr. Holleman filed his complaint on March 3, 2011. Defendants therefore argue that any claim of inadequate food service before March 3, 2009 is barred. Mr. Holleman argues that his claims should not be barred because he was restricted from using the law library and because his food service complaints amount to a continuing violation.

Mr. Holleman first argues that the restrictions of his access to the law library were so severe as to prevent him from filing this action in a timely manner. Specifically, he asserts that

his access to the law library was "very limited" while he was housed on the SCU (between October 15, 2008 and April 14, 2010) and that once he was released from the SCU, he continued to have problems receiving access to the law library.  Mr. Holleman does not detail the limited access he received to the law library during this time, but only states that one of his grievances regarding library access during this time was deemed to be founded.  Here,

> the issue is not whether Holleman could have handled the entire course of litigation, or even could have prepared an adequate legal memorandum on a summary judgment motion . . . . [t]he question is only whether this system was enough to allow Holleman to file an initial complaint that would have satisfied Rules 8 and 11, bearing in mind too the liberality with which the district courts must construe such filings.

*Holleman v. Weist*, 202 F.3d 273, *2 (7th Cir. 1999).  Mr. Holleman states that he knew he was being fed a constitutionally inadequate diet.  He also knew who he claims to be responsible for that diet.  He needed no case citations or legal research to make this claim.  *See id.* at *3.  Here, Mr. Holleman has not shown with specificity that lack of access to the law library prevented him from filing a complaint regarding the restrictions of his food portions before March 3, 2011.

Mr. Holleman also argues that the doctrine of continuing harm is applicable to his case. Although the defendants generally bear the burden of proving an affirmative defense such as the statute of limitations, a plaintiff typically bears the burden of establishing an exception to it, as Mr. Holleman seeks here.  *See Moore v. Feinerman*, 515 Fed. Appx. 596 (7th Cir. June 21, 2013) (stating that plaintiff bears the burden of establishing an exception to defendant's affirmative defense); *Ray v. Clements*, 700 F.3d 993, 1008 (7th Cir. 2012) (ruling that a habeas petitioner must prove grounds for equitably tolling a statute of limitations).  Mr. Holleman has failed to establish that a continuing violation exception applies to the circumstances of this case.

Civil rights claims accrue when the plaintiff knew or should have known that his constitutional rights have been violated.  *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).

"For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, No. 11-1491, 2013 WL 3336713, *3 (7th Cir. July 3, 2013) (*citing Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)). A violation is continuing where "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Id.* (*Heard,* 253 F.3d at 319). The alleged denial of appropriate food over a long period of time could qualify as a continuing violation – or a "cumulative violation." *Id.* at **6-7 (J. Easterbrook, concurring) (labeling different types of continuing violations for "clarity of thought."). At summary judgment, however, the non-moving party must make a "sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Salas v. Wis. Dep't of Corrs.*, 493 F.3d 913, 921 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322–23). Mr. Holleman admits that he knew that he was being fed in an unconstitutional manner from October 2008 through March 2009. Thus his claim was actionable at that time. Accordingly, the Defendants are entitled to judgment as a matter of law on all claims based on events which occurred before March 3, 2009. In other words, the relevant time frame in this action is March 3, 2009 through April 14, 2010.

## V. <u>CONCLUSION</u>

For the reasons stated above, the Defendants' Motion for Summary Judgment (Dkt. 118) is **GRANTED** in part and **DENIED** in part**.** The Motion for Summary Judgment is **GRANTED** as to Mr. Holleman's claims against Grievance Specialists Littlejohn and Lytle. Ms. Littlejohn and Mr. Lytle are therefore dismissed from this action. The Motion is also **GRANTED** as to any claim of deliberate indifference that took place before March 3, 2009.

14

Because there are genuine issues of material fact regarding whether Defendants Sergeant Petty, Lieutenant King, and Mr. Schilling were deliberately indifferent to Mr. Holleman's serious need for adequate nutrition, the Motion for Summary Judgment is **DENIED** as to the claims against Sergeant Petty, Lieutenant King, and Mr. Schilling for alleged incidents that occurred *after* March 3, 2009.

No partial final judgment shall issue as to the claims resolved in this Entry.

**SO ORDERED.**

Date: 10/28/2013
_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert Holleman, #10067
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana  46064

Matthew James Schafer
DREWRY SIMMONS VORNEHM, LLP
mschafer@dsvlaw.com

Thomas J. Grau
DREWRY SIMMONS VORNEHM, LLP
tgrau@dsvlaw.com

Grant E. Helms
OFFICE OF THE ATTORNEY GENERAL
grant.helms@atg.in.gov

15